UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PV,<br>*Plaintiff*,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security;<br>U.S. DEPARTMENT OF HOMELAND SECURITY; and<br>TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement,<br>*Defendants*. | Case No.  1:25-cv-00344 |

**PLAINTIFF'S PRROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW
ON MOTION FOR TEMPORARY RESTRAINING ORDER**

**FINDINGS OF FACT**

Plaintiff PV is a thirty-one year old native and citizen of India, who has been in the US continuously since 2016, when he arrived on an F-1 student visa to study for a master's degree in chemical engineering at SUNY Buffalo. After graduating in 2018, he enrolled in a Ph.D. program, for electrochemistry, with the same university. The focus of his Ph.D thesis was the use of cathodic voltage to stimulate electrochemical changes around implant or prosthetic devices, in order to prevent and treat bacterial biofilm infections, and thus avoid the need for a revision surgery. He graduated with a Ph.D. in 2024, and was then granted post-completion OPT, which expires in August 2025, with an option to extend as a "STEM" OPT for another two years. Since graduating from his Ph.D. program he has been working as a post doctorate associate, on his OPT, at the same university. (Complaint, ¶ 22; Plaintiff's Declaration in support of TRO, ¶ 2)).

In November 2017, Plaintiff was charged in NY State with a number of offenses under the NY Vehicle and Traffic Law, including driving under the influence of alcohol. In January 2018 he pleaded guilty to driving while ability impaired, a violation of New York Vehicle and Traffic Law § 1192.1 (which is classified as a traffic infraction and not a crime) and paid a fine. . Later than same year, he was charged in Delaware County, Pennsylvania, with similar crimes and in September 2018, pleaded guilty in the Court of Common Pleas of Delaware County to General Impairment, a violation of § 3802(a)(1) of Title 75, the Pennsylvania Motor Vehicle Code, spent 48 hours in the county jail and completed a safe driving course. Other than a speeding ticket in 2024, Plaintiff has had no other contact with the police and has no other criminal history, in the US or elsewhere. (Complaint, ¶ 24; Plaintiff's declaration in support of TRO, ¶ 3).

Plaintiff has returned to India five times since his initial 2016 entry. In 2019 and 2024 he applied for and was issued a new F-1 visa by the US consulate in India. In 2019, while applying to renew his F-1 visa, he underwent screening by a consular-designated physician to determine if he suffered from any type of alcohol-related disorder, and she determined that he did not. He was then interviewed by consular officials about the incidents, and on each occasion his visa was re-issued. He last entered the US in January 2025, on his F-1 visa. (Complaint, ¶ 23; Plaintiff's Declaration in support of TRO, ¶ 3).

On April 8, 2025, Plaintiff received an email from the University of Buffalo informing him that "that the Department of Homeland Security (DHS) terminated your SEVIS record on 4/8/2025. Your F-1 status in the U.S. is no longer valid." The email stated that the University "[doesn't] have specific details about why this occurred", but that "Since your F-1 status has ended, your Post-Completion OPT work authorization has ended. You must stop working and notify your employer about this immigration status update." (Complaint, ¶ 26; Plaintiff's Declaration in support of TRO, ¶ 4; Termination email, Exhibit C hereto).

This termination has put Plaintiff's education, research, and career trajectory at risk. He is no longer authorized to work, and so he may lose his job, not just for the duration of his OPT, which would expire in August 2025, but also his STEM OPT which would give him the option to work in the U.S. for an additional two years. His post doctorate program is Plaintiff's sole source of income. This termination of his F-1 status also puts PV at risk of immediate detention and deportation (Complaint, ¶¶ 28 – 30). As he states, "I am afraid to leave my apartment in case I am detained by ICE and placed in removal proceedings." (Plaintiff's Declaration in support of TRO, ¶ 4).

On April 18, 2025, Plaintiff commenced the instant action, in which he asserted three

causes action: violation of his right to due process of law under the Fifth Amendment (Count 1) as well as violations of the Administrative Procedures Act (APA) (Counts 2, 3 and 4).

**Conclusions of Law**

The standards for a TRO and a preliminary injunction are the same. In this Second Circuit, those standards are "(1) 'either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor,' *County of Nassau, N.Y. v. Leavitt*, 524 F.3d 408, 414 (2d Cir. 2008), and (2) 'irreparable harm in the absence of the injunction,' *id*; *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 116 (2d Cir. 2009). Showing irreparable harm has been held as the most important prerequisite for a TRO. *Id*, 118. The third and fourth factors, "(3) the balance of equities tips in their favor; and (4) an injunction is in the public interest" *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008), have been held to merge when the federal government is a party to the case. *Nken v. Holder*, 556 U.S. 418, 435, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009).

These factors are satisfied here.

1. **PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF HER CLAIM THAT THE TERMINATION OF HER STATUS WAS UNLAWFUL**

    a. **The Termination Violates the Fifth Amendment's Due Process Clause (Count 1)**

Defendants' termination of Plaintiff's F-1 student status violates the Fifth Amendment's Due Process Clause, which applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Black v. Decker, 103 F.4th 133, 143 (2d Cir. 2024)*, citing *Zadvydas v. Davis*, 533 U.S. 678, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001). For Plaintiff, the due process clause requires, at a minimum, notice of the

evidence against her, as well as a meaningful opportunity to contest her termination. *Karpova v. Snow*, 497 F.3d 270 (2d Cir. 2007), *Mathews v. Eldridge*, 424 U.S. 332 1976). In this case, Defendants did not provide any notice to Plaintiff of their intent to terminate hIS SEVIS records or F-1 student status. Plaintiff learned about this termination after the fact, when the school notified HIM, after they noticed it during their inspection of SEVIS records.

Further, Defendants have not provided Plaintiff with any subsequent explanation for the termination, or any opportunity to respond. Plaintiff was only notified of the termination from the University of Buffalo, who emailed him to inform him that the University "[doesn't] have specific details about why this occurred", but that "Since your F-1 status has ended, your Post-Completion OPT work authorization has ended. You must stop working and notify your employer about this immigration status update." (Complaint, ¶26; Termination email, Exhibit C) Other than this, Plaintiff has not been given any explanation for the termination of his SEVIS status, or any opportunity to respond to it. This failure to notify him in advance and provide him with an opportunity to contest it likely violates his rights to due process under the Fifth Amendment. Plaintiff thus shows a likelihood of success on Count 1 of the Complaint.

      b.      **The Termination Violates the Administrative Procedure Act (Counts 2 and 3)**

Defendants' termination of Plaintiff's F-1 student status under the SEVIS system also violates the Administrative Procedure Act (APA).

Defendants' termination of Plaintiff's F-1 student status is a final agency action which this Court has jurisdiction to review. *Jie Fang v. Dir. U.S. ICE*, 935 F.3d 172, 182 (3d Cir. 2019). ("[t]he order terminating these students' F-1 visas marked the consummation of the agency's decision making process, and is therefore a final order"). Substantively, Defendants had no authority to terminate Plaintiff's F-1 student status.

4

DHS's ability to terminate an F-1 student's status is limited by its own regulations at 8 C.F.R. §§ 214.1(d) – (g).  Under these regulations, DHS can terminate student status only when: "(1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination."  8 C.F.R. §§ 214.1(d); a student has engaged in unauthorized employment (8 C.F.R. § 214.1(e)); they have provided false information to DHS (8 C.F.R. § 214.1(f)); or they have been convicted of a crime of violence for which a sentence of one year or more may be imposed (8 C.F.R. § 214.1(g)).

Defendants have not claimed that any of these factors were the reason Plaintiff's visa was denied.  The email from the University specifically stated that they did not have specific details that formed the basis for the termination.  (Complaint, ¶ 26; Exhibit C hereto), and none of the factors listed at 8 C.F.R. §§ 214.1(d) – (g) are alleged to exist in this case

Because Defendants unlawfully terminated Plaintiff's F-1 student status without any authority, Plaintiff is likely to succeed on his claim that they violated the Administrative Procedures Act at 5 U.S.C. §§ 706(2)(A) (arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law) (Counts 2 and 4) and (D) (without observance of procedure required by law) (Count 3).

**2.  Plaintiff will suffer irreparable injury if Defendants' termination determination is not set aside and enjoined.**

Plaintiff faces irreparable harm on several fronts if a TRO and injunction are not granted.

First, Plaintiff faces possible detention and deportation because of the termination of his status.  Because Defendants claim that he is now without lawful status in the US, Plaintiff is subject to removal proceedings and deportation if he does not leave the country immediately.

5

See 8 U.S.C. §§ 1227(a)(1)(B), (C)(1). If removed, Plaintiff faces a 10 year bar to re-entry, 8 U.S.C. § 1182(a)(9)(A)(ii)(I). Removal proceedings also expose him to the possibility of detention (see 8 U.S.C. § 1226(a)).[1] Under these circumstances, deportation would undoubtedly constitute irreparable harm.

Second, this termination has resulted in Plaintiff's immediate loss of employment According to the email he received, he was required to stop working immediately as his "Post-Completion OPT work authorization has ended". (Complaint, ¶ 26). Plaintiff has completed many years of study to obtain his doctorate degree, and until recently, was working currently to help develop prosthetics and implants to support veterans in the U.S. (Plaintiff's Declaration, Exhibit B, ¶ 5). Loss of this employment would logically place his education, research, and career trajectory at risk.

Further, this termination would prevent him from applying to change status in the U.S., because he is no longer in the lawful non-immigrant status as required to change status, see 8 C.F.R. § 248.1(a), (b). In fact, in a recent (unrelated) case (April 18, 2025), USCIS have stated their intent to deny a change of status for exactly this reason, in a Notice of Intent to Deny (NOID), stating "According to the beneficiary's SEVIS record [ ] their F-1 nonimmigrant status was terminated on April 10, 2025 because of the criminal records check and the revocation of their F-1 visa… It appears that the beneficiary is not in valid F-1 nonimmigrant status, as such, the request for a change of nonimmigrant status may not be approved." (see Exhibit D hereto, USCIS Notice of Intent to Deny (NOID) change of status). In his declaration submitted in support of this TRO, Plaintiff states that his current employer will not be able to keep the

---

[1] In fact, it is difficult to see what Defendants' purpose is in terminating all these students on the basis that they have criminal histories, if Defendants are not then going to commence removal proceedings against them on the basis that they are in the US without legal status.

position open for him during a lengthy appeals process (Plaintiff's Declaration, ¶ 5) Thus, unless Plaintiff is reinstated immediately, he will lose his job as well as any opportunity to change status to keep the job. Under any measure, this constitutes irreparable harm.

Courts within this circuit have found that loss of employment alone does not constitute irreparable harm, "It is well settled, however, that adverse employment consequences are not the type of harm that usually warrants injunctive relief because economic harm resulting from employment actions is typically compensable with money damages." *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 294 (2d Cir.), opinion clarified, 17 F.4th 368 (2d Cir. 2021), citing *Sampson v. Murray*, 415 U.S. 61, 91–92, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974). This is consistent with the rationale that for a harm to be irreparable, "the plaintiff's legal interests [ ] could not be remedied after a final adjudication. *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 285 (2d Cir. 2012).

Here, if Plaintiff is not reinstated, he will not only lose his job, but he will also lose his eligibility to change status in the future, because he will need to be in lawful nonimmigrant status in order for a change of status to be approved. But because of Defendants' wrongful termination, he is not in a lawful nonimmigrant status. This type of harm cannot be remedied after a trial or a final decision in this case, because Plaintiff's job opportunity and eligibility would be long gone by that time (see Plaintiff's declaration, ¶ 5), and Plaintiff would have to remain in the US unlawfully and without legal status in the meantime.

Thus, Plaintiff readily shows that he would suffer irreparable harm if a TRO and injunction is not granted.

**3.     The possibility of harm to other interested persons from the grant or denial of the injunction.**

There is no harm to other interested persons from the grant or denial of the injunction. Plaintiff does not fall into either of the two stated justifications Defendants have proffered as justification for termination of F-1 status in any of the other cases, and which is presumably the basis for the termination in his case, and so there is no harm to Defendants if a TRO is granted. Indeed, granting a temporary restraining order would merely maintain the status quo that has been in place for 9 years of Plaintiff's studies in the United States from his undergraduate program to his Ph.D. program to his current post-educational employment authorization.**4.**

**The public interest would be granted by the granting of an injunction.**

The public interest is best served by enjoining this unconstitutional and unlawful termination of Plaintiff's F-1 student status in a manner that is contrary to federal law, and the United States Constitution. Or as another Court has held, "ensuring that SEVIS termination only occurs in accord with applicable law is in the public interest.", *Patel v. Bondi*, *supra,* US District Court for the Western District of Pennsylvania, Case 1:25-cv-00101, ECF 16, Memorandum and Order Granting Preliminary Injunction, * 5 (April 17, 2025). Further, Plaintiff's work, helping develop prosthetics for U.S. veterans, undoubtedly furthers the public interests. (Plaintiff Declaration, ¶ 5).

## CONCLUSION

Plaintiff has shown a likelihood of success on the merits of his Complaint that Defendants' termination of his SEVIS records and F-1 status and employment authorization violate the Due Process clause of the US Constitution, as well as the Administrative Procedures

Act at 5 U.S.C. § 706.  He also shows that she would suffer irreparable harm if a TRO is not issued, that there is no harm to other interested parties from the issuance of a TRO, and that its issuance would serve the public interest.

It is therefore Ordered that:

(i)  Defendants shall restore Plaintiff's SEVIS record and F-1 student status under the SEVIS system forthwith, effective April 8, 2025;

(ii)  Defendants F-1 student status termination determination is set aside as a nullity;

(iii)  Defendants are enjoined from terminating Plaintiff's student status absent a valid ground as set forth in 8 C.F.R. § 214.1(d) – (g) and absent an adequate individualized pre-deprivation proceeding before an impartial adjudicator;

(iv)  Defendants shall notify Plaintiff's attorney in writing by 5 pm on April 28, 2025 as to the reasons Plaintiff's SEVIS record and F-1 student status was terminated;

(v)  Defendants are enjoined from taking any action against Plaintiff based on their April 8, 2025 termination of his SEVIS record and purported termination of his F-1 status and employment authorization; and

(vi)  Defendants are enjoined from arresting, detaining, or transferring Plaintiff out of this Court's jurisdiction.

Dated: New York, New York,
       April 22, 2025

_____

Hon. Meredith A. Vacca
US District Court Judge