**UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PV, *Plaintiff*, v. KRISTI NOEM, et al., *Defendants*. | Case No. 1:25-cv-344 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR TEMPORARY RESTRAINING ORDER**

**Table of Contents**

**INTRODUCTION** .................................................................................................................. 1

**FACTUAL BACKGROUND** .................................................................................................. 5

    **STANDARD FOR RELIEF** ............................................................................................. 7

**ARGUMENT** .......................................................................................................................... 8

    1.   **PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF his CLAIM THAT THE TERMINATION OF his STATUS WAS UNLAWFUL** ............................................. 8

        a.   The Termination Violates the Fifth Amendment's Due Process Clause (Count 1)  8

        b.   The Termination Violates the Administrative Procedure Act (Counts 2 and 3) ..... 10

    2.   Plaintiff will suffer irreparable injury if Defendants' termination determination is not set aside and enjoined. ................................................................................................ 11

    3.   The balance of equities tip in Plaintiff's favor. ............................................................ 13

    4.   The public interest would not be harmed by the granting of an injunction. ............. 14

**CONCLUSION** ..................................................................................................................... 14

**Cases**

*Daou v. Noem*, US District Court for the Middle District of Florida, 8:25-cv-00976 ................... 7
*Ajugwe v. Noem*, US District Court for the Middle District of Florida, 8:25-cv-00982 ................ 7
*Ariwoola v. Noem*, US District Court for the District of South Carolina, 3:25-cv-03313 ............. 6
*Bejugam v Lyons*, US District Court, Northern District of Alabama, 2:25-cv-537 ....................... 4
*Black v. Decker*, 103 F.4th 133, 143 (2d Cir. 2024) ..................................................................... 11
*Chatwani v Noem et al.*, US District Court, Northern District of Illinois, 25-cv-4024 ................. 4
*Chen et al v Noem*, US District Court, Northern District of California, 25-cv-3292 .................... 4
*County of Nassau, N.Y. v. Leavitt*, 524 F.3d 408, 414 (2d Cir.2008) ............................................. 9
*Deore v US Department of Homeland Security*, US District Court, Eastern District of Michigan, 25-cv-11038 ................................................................................................................................ 7
*Doe 1 v Trump*, US District Court, District of New Jersey, 25-cv-2825 (ECF 13) ....................... 4
*Doe v Noem*, US District Court, Eastern District of California, 25-cv-103 (ECF 13) ................... 5
*Doe v Noem*, US District Court, Western District of Washington, 25-00633 (ECF 16) ............... 5
*Dogan v Noem*, US District Court, District of Columbia, 25-cv-01130 (ECF 7) .......................... 5
*Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 116 (2d Cir. 2009) ....................... 10
*Hinge v Lyons* US District Court, District of Columbia 25-cv-1097 ............................................. 5
*Isserdasani v. Noem*, US District Court for the Western District of Wisconsin Case No. 3:25-cv-00283 ........................................................................................................................................... 5
*Jane Doe 1 v Bondi*, US District Court, Northern District of Georgia, 25-cv-01998 .................... 5
*Jin v Noem*, US District Court, District of Minnesota, 25-cv-1391 ............................................... 5
*Karpova v. Snow*, 497 F.3d 262 (2d Cir. 2007) ....................................................................... 3, 11
*Liu v. Noem*, US District Court for the Southern District of Indiana, Case No. 1:25-cv-00716, ECF 24 ......................................................................................................................................... 7
*Lui v. Noem et al.*, US District Court for the District of New Hampshire, 1:25-cv-00133 ............ 5
*Mashatti v. Lyons*, US District Court, District of Columbia, 25-cv-01100 ................................... 6
*Nken v. Holder*, 556 U.S. 418, 435, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009) ............................ 10
*Oruganti v Noem* US District Court, Southern District of Ohio, 25-cv-409 ................................. 6
*Patel v. Bondi*, US District Court for the Western District of Pennsylvania, Case 1:25-cv-00101 6
*Sampson v. Murray*, 415 U.S. 61, 91–92, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) ........................ 16
*SY v Noem*, US District Court, District of Columbia, 25-cv-03244 ............................................. 6
*Unknown Party v. Trump*, US District Court for the District of Arizona, 25-cv-00175 ................ 6
*We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 294 (2d Cir.) .............................................. 16
*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) . 10
*WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 285 (2d Cir. 2012) ............................................................ 16
*Wu v Lyons*, US District Court for the Eastern District of New York, 25-cv-1979 ...................... 6
*Zadvydas v. Davis*, 533 U.S. 678, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001) ............................ 11
*Zhou v Lyons*, US District Court, Central District of California, 25-cv-2994 .............................. 6

**Statutes**

5 U.S.C. § 706(2)(A) ....................................................................................................................... 8
5 U.S.C. §§ 706(2)(A) ................................................................................................................... 11
8 U.S.C. § 1182(a)(9)(A)(ii)(I) ...................................................................................................... 12
8 U.S.C. § 1226(a) ......................................................................................................................... 12

8 U.S.C. §§ 1227(a)(1)(B) ................................................................................................ 12

**Regulations**
8 C.F.R. § 214.1(d) – (g)................................................................................................. 15
8 C.F.R. § 214.1(e).......................................................................................................... 11
8 C.F.R. § 214.1(f) .......................................................................................................... 11
8 C.F.R. § 214.1(g) .............................................................................................. 1, 3, 10, 11
8 C.F.R. § 248.1(a)........................................................................................................... 13
8 C.F.R. §§ 214.1(d) ....................................................................................................... 11
8 C.F.R. §§ 214.1(d) – (g)............................................................................................... 11

# INTRODUCTION

Plaintiff PV hereby requests a Temporary Restraining Order as well as a preliminary injunction, reinstating his SEVIS record and his F-1 student status retroactive to April 8, 2025, and enjoining Defendants from terminating his F-1 student status and his SEVIS record for the duration of this lawsuit.

The following exhibits are submitted in support of this request:

Exhibit A.   Declaration of Paul O'Dwyer, Plaintiff's attorney;

Exhibit B.   Plaintiff's declaration;

Exhibit C.   Email from University of Buffalo to Plaintiff terminating his F-1 status and employment authorization.

Exhibit F:   April 18, 20205 USCIS Notice of Intent to Deny change of status because of SEVIS and F-1 termination.[1]

Plaintiff is a native and citizen of India, who has been on an F-1 student visa in the US since 2016. Until April 8, 2025, he was working as a post doctorate associate at the University of Buffalo SUNY on employment authorization stemming from his F-1 status, specializing in the research field of using electrical engineering principes to prevent or treat infections caused by medical device implants and prosthetics. On April 8, 2025, Plaintiff received an email from University of Buffalo, stating that Defendants had abruptly terminated his F-1 status and employment authorization, for no stated reason.

Defendants have similarly terminated the status of over 1,400 F-1 students during the last two weeks, leaving them without any status and without any recourse whatsoever,

---

[1] This Notice does not relate to Plaintiff; instead is it submitted to show that Defendants treat people like Plaintiff whose SEVIS records and student status have been terminated to be without legal status in the US.

1

sometimes (as in this case) after years of study and work in the US.  It seems likely that DHS have simply issued these termination notices to any F-1 student who shows up in a criminal records check, regardless of whether or not they have a criminal conviction which warrants termination under the applicable regulations.   However, only a conviction for a crime of violence for which a sentence of more than one year imprisonment may be imposed authorizes termination of non-immigrant status, 8 C.F.R. § 214.1(g), and Plaintiff has no such conviction.

Plaintiff does have two US arrests and convictions, from 2017 and 2018, for DUIA d offenses. These convictions were fully disclosed to US consular officials when Plaintiff applied to renew his visa in 2019, and after an interview, his visa was re-issued.  Without minimizing or trivializing these convictions, and assuming they are the basis for the termination of Plaintiff's status, they do not provide a basis for termination of Plaintiff's student status, and they do not make him deportable or inadmissible.

Because of this termination, Plaintiff faces imminent and irreparable harm.  He is no longer authorized to work in his post doctorate program, which places him in financial and career peril as his post doctorate program is his only source of income.  He also faces potential immigration detention and deportation proceedings, because he is abruptly without legal status.  He is so scared of this possibility that he states he is afraid to leave his apartment.  (Plaintiff's Declaration, ¶¶ 5, 6).   He also may accrue unlawful presence in the US as a result of this unlawful termination, which can carry significant negative immigration consequences for his in the future.

To remedy these wrongs, Plaintiff commenced the instant action, in which he alleges that Defendants' actions violate the Due Process clause of the US Constitution (Count 1) as well as the Administrative Procedures Act (Counts 2, 3 and 4).

As a result, Plaintiff now seeks this TRO and preliminary injunction, to restore the status quo as it was prior to April 8 by restoring Plaintiff's SEVIS record to the state in which it existed on April 7, 2025, and reinstating Plaintiff's F-1 status effective the same date.

As required by Federal Rule of Civil Procedure Rule 65(b)(1), Plaintiff has submitted a sworn declaration, attesting to the facts of the case and to the irreparable harm he will suffer if a TRO is not granted. (Plaintiff Declaration in support of TRO, Exhibit B) Plaintiff's attorney has also submitted a declaration confirming that he has already provided counsel for Defendants with a copy of the filed Complaint, his Order to Show Cause seeking a TRO and this Memorandum of Law and Plaintiff's declaration (O'Dwyer Declaration in support of TRO, Exhibit A).

Plaintiff readily satisfies the standards for a TRO, by showing a likelihood of success on the merits as well as irreparable harm if a TRO is not granted.

Under the Fifth Amendment's Due Process Clause no person may be deprived of life, liberty, or property without reasonable notice and an opportunity to be heard… "at a meaningful time and in a meaningful manner."", *Karpova v. Snow*, 497 F.3d 262, 270 (2d Cir. 2007), citing *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

No such process was provided here with respect to the termination of either SEVIS registration or student status, and so Plaintiff shows a likelihood of success on Count 1 of the Complaint.

Further, there is no legal basis for the termination of Plaintiff's SEVIS records or his F-1 status, regardless of the process provided. The regulations at 8 C.F.R. §§ 214.1(d)-(g) list the specific circumstances which will authorize termination of non-immigrant status, including F-1 student status. None of those circumstances are present here. Termination for criminal activity

3

(which is most often cited by Defendants in these termination notices) requires a conviction for a crime of violence for which a sentence of more than one year imprisonment may be imposed. 8 C.F.R. § 214.1(g). Plaintiff does not have such a conviction. Visa revocation itself is also not a basis for termination of non-immigrant status. Accordingly, Plaintiff shows a likelihood of success on Counts 2, 3 and 4 of the Complaint, alleging that Defendants' actions were without observance of the procedure required by law and were arbitrary, capricious and an abuse of discretion, all in violation of the APA.

Plaintiff also shows irreparable harm if a TRO is not granted. He is now abruptly without any legal status, thus making him subject to a removal proceeding and immigration detention. He is also unable to work, which is his sole source of income, and he will lose his eligibility for future immigration pathways if he accrues unlawful presence time in the U.S.

Over twenty district courts have issued TROs in similar cases within the last week, granting the relief substantially similar to that requested here. See *Bejugam v Lyons*, US District Court, Northern District of Alabama, 2:25-cv-537 (ECF 17); *Chatwani v Noem et al.*, US District Court, Northern District of Illinois, 25-cv-4024 (ECF 10); *Chen et al v Noem*, US District Court, Northern District of California, 25-cv-3292 (ECF 18); *Doe 1 v Trump*, US District Court, District of New Jersey, 25-cv-2825 (ECF 13); *Doe v Noem*, US District Court, Eastern District of California, 25-cv-103 (ECF 13); *Doe v Noem*, US District Court, Western District of Washington, 25-00633 (ECF 16); *Dogan v Noem*, US District Court, District of Columbia, 25-cv-01130 (ECF 7); *Hinge v Lyons* US District Court, District of Columbia 25-cv-1097 (ECF 10, 14); *Isserdasani v. Noem*, US District Court for the Western District of Wisconsin Case No. 3:25-cv-00283 (ECF 7); *Jane Doe 1 v Bondi*, US District Court, Northern District of Georgia, 25-cv-01998 (ECF 23); *Jin v Noem*, US District Court, District of

4

Minnesota, 25-cv-1391 (ECF 13); *Lui v. Noem et al.*, US District Court for the District of New Hampshire, 1:25-cv-00133 (ECF 13); *Mashatti v. Lyons*, US District Court, District of Columbia, 25-cv-01100 (ECF 10); *Oruganti v Noem* US District Court, Southern District of Ohio, 25-cv-409 (ECF 7); *Patel v. Bondi*, US District Court for the Western District of Pennsylvania, Case 1:25-cv-00101 (ECF 16); *SY v Noem*, US District Court, District of Columbia, 25-cv-03244 (ECF 13); *Unknown Party v. Trump*, US District Court for the District of Arizona, 25-cv-00175 (ECF 7); *Wu v Lyons*, US District Court for the Eastern District of New York, 25-cv-1979 (ECF 9); *Zhou v Lyons*, US District Court, Central District of California, 25-cv-2994 (ECF 19); *Ariwoola v. Noem*, US District Court for the District of South Carolina, 3:25-cv-03313 (ECF 8); *Ajugwe v. Noem*, US District Court for the Middle District of Florida, 8:25-cv-00982 (ECF 7); *Daou v. Noem*, US District Court for the Middle District of Florida, 8:25-cv-00976 (ECF 11).[2]

## FACTUAL BACKGROUND

Plaintiff PV is a thirty-one year old native and citizen of India, who has been in the US continuously since 2016, when he arrived on an F-1 student visa to study for a master's degree in chemical engineering at SUNY Buffalo. After graduating in 2018, he enrolled in a Ph.D. program, for electrochemistry, with the same university. The focus of his Ph.D thesis was the use of cathodic voltage to stimulate electrochemical changes around implant or prosthetic devices, in order to prevent and treat bacterial biofilm infections, and thus avoid the need for a

---

[2] But see *Deore v US Department of Homeland Security*, US District Court, Eastern District of Michigan, 25-cv-11038 (ECF 20) and *Liu v. Noem*, US District Court for the Southern District of Indiana, Case No. 1:25-cv-00716, ECF 24, denying motion for a TRO due to a lack of showing of irreparable harm, because "Plaintiffs have not shown non-speculative harm beyond a potential gap in their educations, which standing alone is generally not irreparable harm.", * 7.   That is not the case here: Plaintiff points to specific non-speculative "loss of a specific job [ ] tied to a specific academic opportunity", (Complaint, ¶ 35)

revision surgery. He graduated with a Ph.D. in 2024, and was then granted post-completion OPT, which expires in August 2025, with an option to extend as a "STEM" OPT for another two years. Since graduating from his Ph.D. program he has been working as a post doctorate associate, on his OPT, at the same university. (Complaint, ¶ 22; Plaintiff's Declaration in support of TRO, ¶ 2)).

In November 2017, Plaintiff was charged in NY State with a number of offenses under the NY Vehicle and Traffic Law, including driving under the influence of alcohol. In January 2018 he pleaded guilty to driving while ability impaired, a violation of New York Vehicle and Traffic Law § 1192.1 (which is classified as a traffic infraction and not a crime) and paid a fine. . Later than same year, he was charged in Delaware County, Pennsylvania, with similar crimes and in September 2018, pleaded guilty in the Court of Common Pleas of Delaware County to General Impairment, a violation of § 3802(a)(1) of Title 75, the Pennsylvania Motor Vehicle Code, spent 48 hours in the county jail and completed a safe driving course. Other than a speeding ticket in 2024, Plaintiff has had no other contact with the police and has no other criminal history, in the US or elsewhere. (Complaint, ¶ 24; Plaintiff's declaration in support of TRO, ¶ 3).

Plaintiff has returned to India five times since his initial 2016 entry. In 2019 and 2024 he applied for and was issued a new F-1 visa by the US consulate in India. In 2019, while applying to renew his F-1 visa, he underwent screening by a consular-designated physician to determine if he suffered from any type of alcohol-related disorder, and she determined that he did not. He was then interviewed by consular officials about the incidents, and on each occasion his visa was re-issued. He last entered the US in January 2025, on his F-1 visa. (Complaint, ¶ 23; Plaintiff's Declaration in support of TRO, ¶ 3).

6

On April 8, 2025, Plaintiff received an email from the University of Buffalo informing him that "that the Department of Homeland Security (DHS) terminated your SEVIS record on 4/8/2025.  Your F-1 status in the U.S. is no longer valid."   The email stated that the University "[doesn't] have specific details about why this occurred", but that "Since your F-1 status has ended, your Post-Completion OPT work authorization has ended. You must stop working and notify your employer about this immigration status update."  (Complaint, ¶ 26; Plaintiff's Declaration in support of TRO, ¶ 4; Termination email, Exhibit C hereto).

This termination has put Plaintiff's education, research, and career trajectory at risk. He is no longer authorized to work, and so he may lose his job, not just for the duration of his OPT, which would expire in August 2025, but also his STEM OPT which would give him the option to work in the U.S. for an additional two years. His post doctorate program is Plaintiff's sole source of income. This termination of his F-1 status also puts PV at risk of immediate detention and deportation  (Complaint, ¶¶ 28 – 30).  As he states, "I am afraid to leave my apartment in case I am detained by ICE and placed in removal proceedings."  (Plaintiff's Declaration in support of TRO, ¶ 4).

On April 18, 2025, Plaintiff commenced the instant action, in which he asserted three causes action: violation of his right to due process of law under the Fifth Amendment (Count 1) as well as violations of the Administrative Procedures Act (APA) (Counts 2, 3 and 4).

## STANDARD FOR RELIEF

The standards for a TRO and a preliminary injunction are the same.  In this Second Circuit, those standards are "(1) 'either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor,' *County of Nassau, N.Y. v. Leavitt*,

7

524 F.3d 408, 414 (2d Cir. 2008), and (2) 'irreparable harm in the absence of the injunction,' *id*; *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 116 (2d Cir. 2009). Showing irreparable harm has been held as the most important prerequisite for a TRO. *Id*, 118. The third and fourth factors, "(3) the balance of equities tips in their favor; and (4) an injunction is in the public interest" *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008), have been held to merge when the federal government is a party to the case. *Nken v. Holder*, 556 U.S. 418, 435, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009).

These factors are satisfied here.

## ARGUMENT

1. **PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF his CLAIM THAT THE TERMINATION OF his STATUS WAS UNLAWFUL**

The Complaint alleges that Defendants' termination of Plaintiff's SEVIS record and his F-1 student status is unlawful for two independent reasons: First, because it violates the Due Process Clause of the Fifth Amendment under the Constitution (Count 1); and second, it violates the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) as arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law (Counts 2, 3 and 4).

### a. The Termination Violates the Fifth Amendment's Due Process Clause (Count 1)

Defendants' termination of Plaintiff's F-1 student status straightforwardly violates the Fifth Amendment's Due Process Clause. The Due Process Clause "establishes due process rights for 'all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.'" *Black v. Decker*, 103 F.4th 133, 143 (2d Cir. 2024), citing

*Zadvydas v. Davis*, 533 U.S. 678, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001).[3]  For Plaintiff, the due process clause requires, at a minimum, notice of the evidence against him, as well as a meaningful opportunity to contest his termination.  *Karpova v. Snow*, *supra*, 497 F.3d 270 (2d Cir. 2007), *Mathews v. Eldridge*, *supra*, 424 U.S. 332.

In this case, Defendants did not provide any notice to Plaintiff before terminating his SEVIS records and his F-1 student status and employment authorization.  Plaintiff learned about this termination after the fact, when the school notified him by email, after they noticed it during their inspection of SEVIS records for their students.

Further, Defendants have not provided Plaintiff with any subsequent explanation for the termination, or any opportunity to respond.  Plaintiff was only notified of the termination from the University of Buffalo, who emailed him to inform him that the University "[doesn't] have specific details about why this occurred", but that "Since your F-1 status has ended, your Post-Completion OPT work authorization has ended. You must stop working and notify your employer about this immigration status update."  (Complaint, ¶26; Termination email, Exhibit C)  Other than this, Plaintiff has not been given any explanation for the termination of his SEVIS status, or any opportunity to respond to it.  This failure to notify him in advance and provide him with an opportunity to contest it likely violates his rights to due process under the Fifth Amendment.   Plaintiff thus shows a likelihood of success on Count 1 of the Complaint.

Based on similar SEVIS record terminations (in which hundreds and hundreds of F-1 students have been terminated because their names appeared in a criminal records check), the only possible basis for the termination is the criminal history of Plaintiff.  However, even that would not justify termination, as Plaintiff has not committed a qualifying crime.  His 2017 and

---

[3] By contrast, "recent clandestine entrants [ ] do not qualify for constitutional protections based merely on their physical presence alone." *Castro v. United States Dep't of Homeland Sec*., *supra*, 835 F.3d 448.

2018 offenses did not result in a conviction for a crime of violence with a sentence one year or more such that they would justify termination of non-immigrant status, 8 C.F.R. § 214.1(g). Thus, the criminal record check or visa revocation could not serve as the basis for terminating his F-1 student status.

The DUAI offenses also do not provide a basis for revocation of Plaintiff's visa, if that were to be the claimed justification for his termination in SEVIS. The Foreign Affairs Manual (FAM), which governs the actions of consular officers in connection with visas, provides for visa revocation for a DUI-related conviction, but only if the conviction occurred within the previous five years, and specifically prohibits revocation of a visa if "the arrest has already been addressed within the context of a visa application", 9 FAM 403.11-5(B)(c). Plaintiff's DUI-related arrests were in 2017 and 2018, seven years ago, and they were fully disclosed to the US consular officer when Plaintiff applied for a new F-1 visa in 2019. ((Complaint, ¶ 45; Plaintiff's Declaration in support of TRO, ¶ 3).

**The Termination Violates the Administrative Procedure Act (Counts 2 and 3)**

Defendants' termination of Plaintiff's F-1 student status under the SEVIS system also violates the Administrative Procedure Act (APA).

Defendants' termination of Plaintiff's F-1 student status is a final agency action which this Court has jurisdiction to review under the APA. *Jie Fang v. Dir. U.S. ICE*, 935 F.3d 172 (3d Cir. 2019). ("[t]he order terminating these students' F-1 visas marked the consummation of the agency's decisionmaking process, and is therefore a final order", *id*, 182).

Upon review, Defendants had no authority to terminate Plaintiff's F-1 student status.

DHS's ability to terminate an F-1 student's status is limited by its own regulations at 8 C.F.R. §§ 214.1(d) – (g). Under these regulations, DHS can terminate student status only when:

"(1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination."  8 C.F.R. §§ 214.1(d); a student has engaged in unauthorized employment (8 C.F.R. § 214.1(e)); they have provided false information to DHS (8 C.F.R. § 214.1(f)); or they have been convicted of a crime of violence for which a sentence of one year or more may be imposed (8 C.F.R. § 214.1(g)).

Defendants have not claimed that any of these factors were the reason Plaintiff's visa was denied.  The email from the University specifically stated that they did not have specific details that formed the basis for the termination.  (Complaint, ¶ 26; Exhibit C hereto).

Because Defendants unlawfully terminated Plaintiff's F-1 student status without any authority, Plaintiff is likely to succeed on his claim that they violated the Administrative Procedures Act at 5 U.S.C. §§ 706(2)(A) (arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law) (Counts 2 and 4) and (D) (without observance of procedure required by law) (Count 3).

**2.      Plaintiff will suffer irreparable injury if Defendants' termination determination is not set aside and enjoined.**

Plaintiff faces irreparable harm on several fronts if a TRO and injunction are not granted.

First, Plaintiff faces possible detention and deportation because of the termination of his status.  Because Defendants claim that he is now without lawful status in the US, Plaintiff is subject to removal proceedings and deportation if he does not leave the country immediately. See 8 U.S.C. §§ 1227(a)(1)(B), (C)(1). If removed, Plaintiff faces a 10 year bar to re-entry, 8 U.S.C. § 1182(a)(9)(A)(ii)(I).   Removal proceedings also expose him to the possibility of

11

detention (see 8 U.S.C. § 1226(a)).[4] Under these circumstances, deportation would undoubtedly constitute irreparable harm.

Second, this termination has resulted in Plaintiff's immediate loss of employment According to the email he received, he was required to stop working immediately as his "Post-Completion OPT work authorization has ended". (Complaint, ¶ 26). Plaintiff has completed many years of study to obtain his doctorate degree, and until recently, was working currently to help develop prosthetics and implants to support veterans in the U.S. (Plaintiff's Declaration, Exhibit B, ¶ 5). Loss of this employment would logically place his education, research, and career trajectory at risk.

Further, this termination would prevent him from applying to change status in the U.S., because he is no longer in the lawful non-immigrant status as required to change status, see 8 C.F.R. § 248.1(a), (b). In fact, in a recent (unrelated) case (April 18, 2025), USCIS have stated their intent to deny a change of status for exactly this reason, in a Notice of Intent to Deny (NOID), stating "According to the beneficiary's SEVIS record [ ] their F-1 nonimmigrant status was terminated on April 10, 2025 because of the criminal records check and the revocation of their F-1 visa… It appears that the beneficiary is not in valid F-1 nonimmigrant status, as such, the request for a change of nonimmigrant status may not be approved." (see Exhibit D hereto, USCIS Notice of Intent to Deny (NOID) change of status). In his declaration submitted in support of this TRO, Plaintiff states that his current employer will not be able to keep the position open for him during a lengthy appeals process (Plaintiff's Declaration, ¶ 5) Thus, unless Plaintiff is reinstated immediately, he will lose his job as well as any opportunity to

---

[4] In fact, it is difficult to see what Defendants' purpose is in terminating all these students on the basis that they have criminal histories, if Defendants are not then going to commence removal proceedings against them on the basis that they are in the US without legal status.

change status to keep the job.  Under any measure, this constitutes irreparable harm.

Courts within this circuit have found that loss of employment alone does not constitute irreparable harm, "It is well settled, however, that adverse employment consequences are not the type of harm that usually warrants injunctive relief because economic harm resulting from employment actions is typically compensable with money damages." *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 294 (2d Cir.), opinion clarified, 17 F.4th 368 (2d Cir. 2021), citing *Sampson v. Murray*, 415 U.S. 61, 91–92, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974). This is consistent with the rationale that for a harm to be irreparable, "the plaintiff's legal interests [ ] could not be remedied after a final adjudication. *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 285 (2d Cir. 2012).

Here, if Plaintiff is not reinstated, he will not only lose his job, but he will also lose his eligibility to change status in the future, because he will need to be in lawful nonimmigrant status in order for a change of status to be approved.  But because of Defendants' wrongful termination, he is not in a lawful nonimmigrant status.  This type of harm cannot be remedied after a trial or a final decision in this case, because Plaintiff's job opportunity and eligibility would be long gone by that time (see Plaintiff's declaration, ¶ 5), and Plaintiff would have to remain in the US unlawfully and without legal status in the meantime.

Thus, Plaintiff readily shows that he would suffer irreparable harm if a TRO and injunction is not granted.

**3.     The balance of equities tip in Plaintiff's favor.**

There is no harm to other interested persons from the grant or denial of the injunction. Plaintiff does not fall into either of the two stated justifications Defendants have proffered as justification for termination of F-1 status in any of the other cases, and which is presumably the

basis for the termination in his case, and so there is no harm to Defendants if a TRO is granted. Indeed, granting a temporary restraining order would merely maintain the status quo that has been in place for 9 years of Plaintiff's studies in the United States from his undergraduate program to his Ph.D. program to his current post-educational employment authorization.

**4.     The public interest would not be harmed by the granting of an injunction.**

The public interest is best served by enjoining this unconstitutional and unlawful termination of Plaintiff's F-1 student status in a manner that is contrary to federal law, and the United States Constitution. Or as another Court has held, "ensuring that SEVIS termination only occurs in accord with applicable law is in the public interest.", *Patel v. Bondi*, *supra,* US District Court for the Western District of Pennsylvania, Case 1:25-cv-00101, ECF 16, Memorandum and Order Granting Preliminary Injunction, * 5 (April 17, 2025). Further, Plaintiff's work, helping develop prosthetics for U.S. veterans, undoubtedly furthers the public interests. (Plaintiff Declaration, ¶ 5).

## CONCLUSION

The Court should issue a temporary restraining order (i) directing Defendants to restore Plaintiff's F-1 student status under the SEVIS system; (ii) requiring Defendants to set aside their F-1 student status termination determination as well as any corresponding termination of employment authorization; (iii) enjoining Defendants from terminating Plaintiff's student status absent a valid ground as set forth in 8 C.F.R. § 214.1(d) – (g) and absent an adequate individualized pre-deprivation proceeding before an impartial adjudicator; and (iv) enjoining Defendants from arresting, detaining, or transferring Plaintiff out of this Court's jurisdiction.

Dated: New York, New York,
April 22, 2025

_/s__ Paul O'Dwyer
Paul O'Dwyer
Attorney for Plaintiff
Law Office of Paul O'Dwyer PC
11 Broadway, Suite 715
New York NY 10004
(646) 230-7444
paul.odwyer@paulodwyerlaw.com