UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

P.V.,

                              Plaintiff,


            v.                                          25-CV-00344 MAV


KRISTI NOEM, in her official capacity as Secretary, U.S.
Department of Homeland Security,

U.S. DEPARTMENT OF HOMELAND SECURITY, and

TODD LYONS, in his official capacity as Acting Director,
Immigration and Customs Enforcement,

                              Defendants.

_____


**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY
RESTRAINING ORDER**

**TABLE OF CONTENTS**

STATUTORY AND REGULATORY FRAMEWORK.................................................2

  I.   THE F-1 NONIMMIGRANT STUDENT CLASSIFICATION.........................2

  II.  THE STUDENT AND EXCHANGE VISITOR INFORMATION SYSTEM ("SEVIS") .................................................................................................3

  III. THE PRIVACY ACT OF 1974..............................................................4

FACTS AND PROCEDURAL HISTORY.....................................................6

LEGAL STANDARDS FOR A TRO.............................................................7

ARGUMENT .........................................................................................8

  I.   PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE HIS CLAIMS HAVE NO LIKELIHOOD OF SUCCESS ....................................................8

     A.   Plaintiff's Due Process Claim Is Meritless ....................................8

     B.   Plaintiff's APA Claim Likewise Fails .......................................... 10

     C.   Plaintiff Has Not Shown Irreparable Harm ................................. 13

  II.  THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST FAVOR DEFENDANTS....................................................................................... 14

  III. THIS COURT LACKS JURISDICTION TO CURTAIL THE DEFENDANTS' ABILITY TO COMMENCE IMMIGRATION REMOVAL PROCEEDINGS, ADJUDICATE CASES, OR EXECUTE REMOVAL ORDERS AGAINST A FOREIGN NATIONAL...................................................................... 16

CONCLUSION................................................................................ 18

Enforcing the immigration laws of the United States is the sovereign prerogative of the Executive Branch. In executing this enforcement mission as it relates to nonimmigrant (or temporary) foreign students, Congress mandated that the Department of Homeland Security ("DHS"), through U.S. Immigration and Customs Enforcement ("ICE") and the Student Exchange Visitor Program ("SEVP") "develop and conduct a program" to collect certain information from approved institutions of higher education in the United States with respect to aliens seeking F-1 student status. *See* 8 U.S.C. § 1372. Under this authority, DHS (ICE and SEVP) established the Student Exchange Visitor Information System ("SEVIS"). The Plaintiff in this case who holds F-1 student status, is challenging SEVP's change of his[1] record in the SEVIS database from "active" to "terminated." In doing so, SEVP did not delete Plaintiff from the database or terminate his F-1 nonimmigrant student status.[2] Moreover, at this time, ICE has not initiated removal proceedings against Plaintiff and has not taken him into custody. Thus, Plaintiff suffers from no irreparable injury and his complaint and request for emergency relief from this Court is based upon a faulty premise.

The Court should deny Plaintiff's request for preliminary injunctive relief because at the threshold, the Court lacks jurisdiction over his claim for correction of an entry in a government database. The Privacy Act applies to Plaintiff's request for relief and precludes review under the Administrative Procedure Act ("APA"). Moreover, APA review is unavailable here because there is no final agency action before the Court. But even if this was not the case, the Court should still deny Plaintiff's request for a TRO because he cannot

---

[1] Plaintiff uses masculine pronouns in his Complaint so the Government will continue that practice without any imputation being made as to Plaintiff's gender, to protect Plaintiff's anonymity. *See* ECF No. 1.

[2] Plaintiff alleges that DHS has "revoked the status" of numerous foreign students, but has not alleged that he (or anyone) have had their F-1 nonimmigrant visas revoked.

satisfy any of the requirements necessary for the extraordinary remedy of a TRO. Because the only thing the government did in this case was to change a database entry, much of the relief requested by Plaintiff is unwarranted. Additionally, this Court is barred from exercising jurisdiction over certain actions the government may take with respect to instituting removal actions against, and detaining, foreign nationals. For all of these reasons, Plaintiff's motion for a TRO should be denied in its entirety.

## STATUTORY AND REGULATORY FRAMEWORK

### I.    THE F-1 NONIMMIGRANT STUDENT CLASSIFICATION

The Immigration and Nationality Act ("INA"), as amended, allows for the entry of an alien, who "is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study. . . at an established college, university, seminary, conservatory, academic high school, elementary school, or other academic institution or in an accredited language training program in the United States." 8 U.S.C. § 1101(a)(15)(F)(i) (hereinafter, "F-1 status").[3] As relevant here, to be admitted in F-1 status, an applicant must present a Form I-20, issued by a certified school in the student's name; present documentary evidence of financial support; and demonstrate he or she intends to attend the school specified on the student's visa. 8 C.F.R. § 214.2(f)(1)(i). To maintain F-1 status, a nonimmigrant student must "pursue a full course of study" or "engage in authorized practical training." *Id.* § 214.2(f)(5)(i).

---

[3] To qualify for F-1 nonimmigrant status, a foreign national is required to (1) apply and gain admission to an approved U.S. educational institution, (2) obtain a "Certificate of Eligibility for Nonimmigrant (F-1) Student Status (a "Form I-20"), issued by the school, and (3) submit a visa application at the U.S. Embassy or Consulate abroad. *See, e.g., Bitar v. U.S. Dep't of Justice*, 582 F. Supp. 417, 418-19 (D. Colo. 1983).

Individuals admitted in F-1 status are permitted to remain in the United States for the duration of status (or "D/S"), *see Silva v. Gonzales*, 463 F.3d 68, 69 (1st Cir. 2006), which "is defined as the time during which an F-1 student is pursuing a full course of study at an educational institution certified by SEVP for attendance by foreign students, or engaging in authorized practical training following completion of studies." 8 C.F.R. § 214.2(f)(5). An F-1 student admitted for the duration of status found to have violated his status does not begin to accrue unlawful presence until the day after a request for another immigration benefit is denied by U.S. Citizenship and Immigration Services ("USCIS"), or during removal proceedings, the day after an Immigration Judge enters an order that the alien violated his nonimmigrant status. *See* USCIS Memorandum on May 6, 2009, "Consolidation of Guidance Concerning Unlawful Presence for Purposes of Section 212(a)(9)(B)(i) and 212(a)(9)(C)(i)(1) of the Act," found online at: https://www.uscis.gov/sites/default/files/document/memos/revision_redesign_AFM.PDF (last visited Apr. 17, 2025); *see also* 8 C.F.R. § 239.3.

## II.     THE STUDENT AND EXCHANGE VISITOR INFORMATION SYSTEM (SEVIS)

In order to enhance the integrity of the immigration system in the wake of the September 11, 2001, terrorist attacks, Congress mandated that "[t]he [Secretary of Homeland Security], in consultation with the Secretary of State and the Secretary of Education, . . develop and conduct a program to collect [certain information] from approved institutions of higher education, other approved educational institutions, and designated exchange visitor programs in the United States [certain information] with respect

to aliens who have the status, or are applying for the status, of nonimmigrants under subparagraph (F), (J), or (M) of section 1101(a)(15) of this title." 8 U.S.C. § 1372(a)(1).

Under this authority, DHS created SEVIS, "which is a web-based system" that DHS, through the Student Exchange Visitor Program ("SEVP") "uses to maintain information on Student and Exchange Visitor Program-certified schools, F-1 and M-1 students who come to the United States to attend those schools, U.S. Department of State-designated Exchange Visitor Program sponsors and J-1 visa Exchange Visitor Program participants." *See* "ICE, Student and Exchange Visitor Information System," found online at: https://www.ice.gov/sevis/overview (last visited Apr. 17, 2025). Under 8 U.S.C. § 1372,

Congress has provided DHS, through SEVP, with broad authority to administer SEVIS. Inherent in that authority is SEVP's ability to maintain, update and change SEVIS records as needed (*e.g.*, from "active to "terminated"), to carry out the purposes of the program. Notably, SEVP's termination of an alien's record in SEVIS does not terminate that person's nonimmigrant status in the United States. Moreover, the statute does not provide SEVP the authority to terminate an alien's nonimmigrant status by terminating his SEVIS record. In accordance with the Privacy Act of 1974, DHS "modif[ed], rename[d] and reissue[d]" the SEVIS database as "DHS/ICE-001 Student and Exchange Visitor Information System (SEVIS) System of Records." *See* 86 Fed. Reg. 69663 (Dec. 8, 2021).

## III.    THE PRIVACY ACT OF 1974

The Privacy Act of 1974, Pub Law No. 93-579, 88 Stat 1896 (Dec. 31, 1974), codified at 5 U.S.C. § 552a (2018), establishes practices for federal agencies regarding the collection, maintenance, use, and dissemination of information about individuals within systems of records. *See* Pub. L. 93–579, § 2, Dec. 31, 1974, 88 Stat. 1896 (codified at 5

U.S.C. § 552a (notes). The Privacy Act gives agencies detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by the Government's purported compliance failures. *See generally*, 5 U.S.C. § 552a. A system of records is defined by statute as a group of records under the control of an agency from which information is retrieved by the name of the individual or by some identifier assigned to the individual. 5 U.S.C. § 552a(a)(5). The Privacy Act sets forth agency record-keeping requirements, places restrictions on disclosure of information, and provides a means for individuals to access their records and seek correction of inaccurate information in those records. *Id.* §§ 552a(b)-(d).

Relevant here, 5 U.S.C. § 552a(d) addresses how an individual may access agency records, seek amendment to those records, exhaust administrative remedies prior to seeking judicial redress, and file a statement of disagreement to be included with the records. 5 U.S.C. § 552a(d)(1)- (4). After following the required steps to exhaust administrative remedies, a final determination by the agency head triggers the civil remedy provisions of §552a(g)(1)(A). *Id.* at (d)(3).

The district courts have jurisdiction over any action brought pursuant to the civil remedy provisions of subsection (g) including an action to correct a record. *Id.,* § 552a(g)(1). In an action to correct a record, the court can order the agency to make the correction. *Id.* § 552a(g)(2).

The Privacy Act limits remedies to any individual who is "a citizen of the United States or an alien lawfully admitted for permanent residence." *Id.* at 552a(a)(2). In a subsequent 2016 amendment under the Judicial Redress Act, Congress extended certain Privacy Act remedies to citizens of designated countries and granted venue for such

challenges to the U.S. District Court for the District of Columbia. 5 U.S.C. § 552a (statutory note), Pub. L. 114-126 (Feb. 24, 2016), 130 Stat. 282. The countries that have been designated pursuant to that amendment are the United Kingdom and majority of the countries of the European Union. 82 Fed. Reg 7860-61 (Jan. 23, 2017); 84 Fed. Reg. 3493-94 (Feb. 12, 2019).

## FACTS AND PROCEDURAL HISTORY

Plaintiff is a foreign national from India. Comp., ECF No. 1, at ¶ 1. He has been working with employment authorization under Optional Practical Training ("OPT"), which is granted to foreign students upon graduation from their course of study. *Id.*

In 2017 and 2018, Plaintiff was arrested and convicted of two offenses relating to driving under the influence. Comp. at ¶ 3. On April 8, 2025, Plaintiff received an email from the University of Buffalo advising him that his SEVIS record was terminated. *Id.* at ¶ 26.

On April 18, 2025, Plaintiff filed a Complaint alleging violations of his due process rights under the Fifth Amendment (Count 1) and violations of the APA (Counts 2, 3 and 4). Comp. at ¶¶ 31-50. On April 22, 2025, Plaintiff filed a Motion for a TRO[4], ECF No. 6-5, seeking an order:

(1) Restoring his SEVIS record and F-1 student status under the SEVIS system;

(2) Declaring the F-1 status termination to be a nullity;

---

[4] It does not appear that Plaintiff ever filed an actual motion for a TRO; ECF No. 6 contains a draft Order to Show Cause for the Court to so-order; ECF Nos. 6-1 and 6-2 are declarations; ECF Nos. 6-3 and 6-4 appear to be exhibits; ECF No. 6-5 appears to be another document for the Court to so-order. Plaintiff did send a memorandum of law in support of the TRO to the undersigned on April 21, 2025, but it did not include a formal notice of motion either.

(3) Requiring Defendants to advise Plaintiff's attorney of the reason Plaintiff's SEVIS record and F-1 student status was terminated;

(4) Enjoining Defendants from taking any action against Plaintiff based on the termination of his SEVIS record; and

(5) Enjoining Defendants from arresting, detaining, or transferring Plaintiff out of the Court's jurisdiction.

ECF No. 6 at pg. 10.

## LEGAL STANDARDS FOR A TRO

"[A] preliminary injunction[5] is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted). "First, the party must demonstrate that it will suffer irreparable harm in the absence of the requested relief." *Latino Officers Ass'n v. Safir*, 170 F.3d 167, 171 (2d Cir. 1999). Generally, even if the moving party establishes irreparable harm, a court may not grant the requested injunctive relief unless the moving party also establishes either (a) that it is likely to succeed on the merits or (b) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships that tips decidedly in favor of the moving party. *Charette v. Town of Oyster Bay*, 159 F.3d 749, 754 (2d Cir. 1998). Additionally, where, as here, "the moving party seeks a preliminary injunction that will affect government action taken in the public interest pursuant to a statutory or regulatory scheme," the injunction should be granted "only if the moving party meets the more rigorous likelihood-of-success standard.'" *Wright v. Giuliani*, 230 F.3d 543, 547 (2d Cir. 2000) (citation omitted); *see also Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 424 (2d Cir. 2004) (because "government

---

[5] "In the Second Circuit, the standard for a temporary restraining order is the same as for a preliminary injunction." *Jackson v. Johnson*, 962 F. Supp. 391, 392 (S.D.N.Y. 1997).

action taken in furtherance of a regulatory or statutory scheme [is] presumed to be in the public interest[,] in such situations, a plaintiff must meet a more rigorous likelihood-of-success standard'" to obtain preliminary injunctive relief (internal citation omitted)).

Lastly, a party seeking injunctive relief must also show "that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Veramark Techs., Inc. v. Bouk*, 10 F. Supp. 3d 395, 400 (W.D.N.Y. 2014) (Wolford, J.).

The decision whether to grant or deny a preliminary injunction falls within the sound discretion of the district court. *CJ Prod.* LLC *v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, 140 (E.D.N.Y. 2011). However, because a preliminary injunction is "an extraordinary remedy" that may only be awarded "upon a clear showing that the plaintiff is entitled to such relief," it "is never awarded as of right." *Winter*, 555 U.S. at 22, 24.

## **ARGUMENT**

### I. **PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE HIS CLAIMS HAVE NO LIKELIHOOD OF SUCCESS**

#### A. **Plaintiff's Due Process Claim Is Meritless**

There is no likelihood of success on the merits in this case. Plaintiff's attempt at a due process claim fails because foreign nationals lack any sort of property or liberty interest in SEVIS records. As the Seventh Circuit has explained, "[i]n order to make out a claim for a violation of due process, a claimant must have a liberty or property interest in the outcome of the proceedings." *Dave v. Ashcroft*, 363 F.3d 649, 652–53 (7th Cir. 2004). Neither such interest exists here under the case law. *See, e.g.*, *Doe 1 v. DHS*, No. 20-cv-9654, 2020 WL 6826200, at *4 n.3 (C.D. Cal. Nov. 20, 2020), *aff'd sub. nom.*, *Does 1–16 v. DHS*, 843 F. App'x

849, 852 (9th Cir. 2021) ("[T]he Student-Athletes do not cite any legal authority to support their position that this interest amounts to a protected property interest. We also find none. Without a protected liberty or property interest at stake, the Student-Athletes do not have a viable due process claim." (internal citation omitted)).

Instead, case law is clear that foreign students do not have a protected interest in SEVIS records. *See, e.g.*, *Yunsong Zhao v. Va. Polytechnic Inst. & State Univ.*, No. 18-cv-189, 2018 WL 5018487, at *6 (W.D. Va. Oct. 16, 2018); *Fenghui Fan v. Brewer*, No. 08-cv-3524, 2009 WL 1743824, at *8 (S.D. Tex. June 17, 2009), *aff'd*, 377 F. App'x 366, 368 (5th Cir. 2010). This is because the SEVIS database is simply an administrative tool that does not affect the lawfulness of someone's nonimmigrant status. *See Yunsong Zhao*, 2018 WL 5018487, at *4–5. For example, regulations permit universities to terminate a SEVIS record, but the plaintiff does not argue that universities have the authority to revoke his immigration status. *See Deore v. Sec'y of DHS*, No. 25-cv-11038, Dkt. 20, slip op. at 7–8, 12–13 (E.D. Mich. Apr. 17, 2025) (Exhibit 1) (finding no likelihood of success on due process claim because "the Court cannot conclude based on the current record whether it is likely that any of the students have lost their F-1 status or have lost any legal rights based solely on the termination of their SEVIS record").

Further, even if there were such a protected interest, the administrative processes afforded to Plaintiff would satisfy the Fifth Amendment. *See Mathews v. Eldridge*, 424 U.S. 319, 339–40 (1976). This is because the review procedures available to Plaintiff (in the event the Plaintiff had actually lost his lawful nonimmigrant F-1 status) would allow him to seek reinstatement administratively from U.S. Citizenship and Immigration Services ("USCIS"). 8 C.F.R. 214.2(f)(16). And even if there were a reason to believe that Plaintiff was going to

be placed into removal proceedings, the procedures available to him in immigration court comply with the Fifth Amendment. *See* 8 U.S.C. § 1229a.

### B.    Plaintiff's APA Claim Likewise Fails

Plaintiff is similarly unlikely to succeed on his theories under the APA. The Privacy Act—not the APA—controls agencies' procedures regarding governmental records. This is important because "[t]he doctrine of sovereign immunity removes subject matter jurisdiction in lawsuits against the United States unless the government has consented to suit." *Beamon v. Brown*, 125 F.3d 965, 967 (6th Cir. 1997). "Although the APA provides a broad waiver of sovereign immunity, codified at 5 U.S.C. § 702, the waiver is limited by . . . § 701(a)(1) [which] provides that Chapter 7 of the APA, including § 702's waiver of sovereign immunity, does not apply to cases in which 'statutes preclude judicial review.'" *Id.* Applied here, the Privacy Act displaces Plaintiff's APA claim, as it is directly on point and allows only individuals to challenge data contained in a government system of records in federal court and establishes a comprehensive scheme for such claims. *See* 5 U.S.C. § 552a(g)(1); *see also Chichakli v. Kerry*, 203 F. Supp. 3d 48, 57 (D.D.C. 2016) (dismissing claims because claims related to unauthorized disclosure of records must be brought pursuant to Privacy Act). Specifically, the Privacy Act *prohibits* most foreign nationals from filing suit challenging records. *See* 5 U.S.C. § 552a(a)(2). As such, the United States has not waived its sovereign immunity here regarding SEVIS. *See* 5 U.S.C. § 701(a)(1); *Durrani v. USCIS*, 596 F. Supp. 2d 24, 28 (D.D.C. 2009); *Cudzich v. INS*, 886 F. Supp. 101, 105 (D.D.C. 1995); *Raven v. Panama Canal Co.*, 583 F.2d 169, 171 (5th Cir. 1978) ("[I]t would be error for this Court to allow plaintiff, a Panamanian citizen, to assert a claim under the Privacy Act."). Moreover, this court would lack jurisdiction over any such claim because Plaintiff has come

nowhere close to exhausting his available administrative remedies. *Cf. Refurble, Inc. v. Julie Su*, No. 24 C 287, 2024 WL 4647862, at *3 (N.D. Ill. Oct. 31, 2024) (requiring administrative exhaustion); *Dickson v. Off. of Pers. Mgmt.*, 828 F.2d 32, 41 (D.C. Cir. 1987) (no jurisdiction over claims under the Privacy Act until a plaintiff presents them to the agency). In sum, the United States has not waived its sovereign immunity here.

Even if the court were to conclude that sovereign immunity has been waived, however, there would still be no "final agency action" under the APA in this matter. Agency action must be "final" to be reviewable under the APA. 5 U.S.C. § 704. And action is final under the APA only if (1) it marks "the consummation of the agency's decisionmaking process" and (2) is "one by which rights or obligations have been determined, or from which legal consequences flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). Here, even if Plaintiff's nonimmigrant status (rather than only his SEVIS record) were at issue, he could administratively challenge the relevant agency decisions. *See* 8 C.F.R. § 214.2(f)(16); 22 C.F.R. § 41.122(b).

This means there has been no "consummation" of anything because the Plaintiff's later opportunity to pursue the administrative process and seek reinstatement is critical under relevant APA case law. *See, e.g.*, *Dhakal v. Sessions*, 895 F.3d 532, 539–40 (7th Cir. 2018) (denial of an affirmative asylum application was not a final agency action because plaintiff still had Temporary Protected Status, and the decision could be reviewed once more in removal proceedings); *McBrearty v. Perryman*, 212 F.3d 985, 987 (7th Cir. 2000) (plaintiff failed to exhaust administrative remedies because review would be available if and when a removal proceeding was initiated).

Indeed, to the extent plaintiff's motion relies on *Jie Fang v. Director of ICE*, 935 F.3d

11

172 (3d Cir. 2019), to argue that the termination of a SEVIS record is final agency action, this is misguided because it conflicts with cases such as *McBrearty*. *See* ECF No. 6-5, at pgs. 5-6. In *Jie Fang*, DHS conducted a sting operation to catch fraudulent student visa brokers. 935 F.3d at 173–74. During that process, several foreign students were granted nonimmigrant visas and entered the United States only to have their immigration status revoked—as opposed to their SEVIS status terminated—by DHS at the conclusion of the investigation. *Id.* Because their status had been revoked, the plaintiffs were placed into removal proceedings. *Id.* at 178–79. On appeal, the Third Circuit concluded that the regulation providing for reinstatement of F-1 nonimmigrant status, 8 C.F.R. § 214.2(f)(16), was not mandatory and that the regulatory appeal procedure was not reviewable in immigration proceedings. *Id.* at 177–78. But the relevant issue in *Jie Fang* was not a SEVIS record; it was the revocation of lawful nonimmigrant status, which led to the students being placed into removal proceedings. *See id.* at 178–79; *see also Deore*, slip op. at 10–11 (distinguishing *Jie Fang* because DHS formally informed the plaintiffs that they no longer had F-1 status and that they would need to either file for reinstatement or depart the United States immediately). This is why the Ninth Circuit came to the opposite conclusion than *Jie Fang* for another set of former F-1 students involved in a separate sting operation who challenged a SEVIS termination. *See Yerrapareddypeddireddy v. Albence*, No. 20-cv-1476, 2021 WL 5324894, at *7 (D. Ariz. Nov. 16, 2021) ("Plaintiffs have produced no evidence showing that there was a finding of visa fraud, and have thus identified no agency action, much less a final agency action, that is subject to judicial review."), *aff'd*, No. 21-17070, 2022 WL 17484323, at *1 (9th Cir. Dec. 7, 2022). Accordingly, Plaintiff is unlikely to succeed on the merits because the APA does not control here, and, even if it did, no agency

action was taken that could be challenged.

### C.    Plaintiff Has Not Shown Irreparable Harm

This court should also deny Plaintiff's motion because he has not carried his burden to show that he is likely to suffer imminent, irreparable harm. *See Int'l Union, Allied Indus. Workers of Am., AFL–CIO v. Local Union No. 589*, 693 F.2d 666, 674 (7th Cir. 1982). To start, Plaintiff asserts that he is irreparably injured because he fears deportation. ECF No. 6-5 at pgs. 6-7. But any claims related to the possibility of removal proceedings do not constitute irreparable injury. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) ("[T]he burden of removal alone cannot constitute the requisite irreparable injury."). Moreover, Plaintiff is free to depart the United States on his own. *See Bennett v. Isagenix Int'l LLC*, 118 F.4th 1120, 1129 (9th Cir. 2024). And a subjective fear of deportation is not irreparable injury where Plaintiff has nowhere demonstrated that removal proceedings against him are anywhere close to imminent. *Jelena Liu v. Noem*, No. 25-cv-716, 2025 WL 1141023, at *2–4 (S.D. Ind. Apr. 17, 2025); ECF No. 6-5 at pgs. 6-7 (discussing *possible* detention).

The same is true of Plaintiff's speculation about potential problems he might run into regarding employment, and his ability to change immigration status. ECF No. 6-5 at pgs. 6-7 (discussing potential risk to his "career trajectory"; challenges to changing his immigration status). This argument also ignores the fact that Plaintiff can continue to work outside of the United States. And if his current OPT employer does not wish to employ him for OPT, or his university does not wish to back his OPT work, that is the choice of a third party, not the Defendants. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 415 n.5 (2013) ("[P]laintiffs bear the burden of pleading and proving concrete facts showing that the defendant's actual action has caused the substantial risk of harm. Plaintiffs cannot rely on

speculation about the unfettered choices made by independent actors not before the court.")
(cleaned up). Moreover, it is a foundational requirement for F-1 status that students
demonstrate the ability to independently cover all costs while present in the United States.
*See* 8 C.F.R. § 214.2(f)(1)(i)(B); *see also Jelena Liu*, 2025 WL 1141023, at *3 (denying TRO
motion because, inter alia, "while [plaintiff] has lost his 'only income' from his employment
at Notre Dame, he has provided no evidence of irreparable harm").

Finally, Plaintiff's concern that he may accrue unlawful presence or have difficulty
changing his immigration status is equally erroneous. This is because he has not even
alleged that his F-1 visa has been revoked. Further, F-1 students begin to accrue unlawful
presence only after USCIS or an immigration judge has instituted administrative action
against them. *See* U.S. Citizenship and Immigration Services, *Interoffice Memorandum of May
6, 2009*;[6] *see also* 8 C.F.R. § 239.3. No such administrative action has been instituted against
Plaintiff, and his motion should thus be denied.

## II.     THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST FAVOR DEFENDANTS

The balance of equities and public interest factors "merge when the Government is
the opposing party." *Nken*, 556 U.S. at 435. A court "'should pay particular regard for the
public consequences'" of injunctive relief. *Winter*, 555 U.S. at 24 (quoting *Weinberger v.
Romero-Barcelo*, 456 U.S. 305, 312 (1982)). Plaintiff asserts that the Defendants will not be
harmed if the TRO is granted. ECF No. 6-5 at pg. 9. But this factor actually favors
Defendants because it is ICE's database that Plaintiff wishes for this court to superintend

---

[6] Available at:
https://www.uscis.gov/sites/default/files/document/memos/revision_redesign_AFM.PD
F (last visited Apr. 21, 2025)

and control. That is a separation-of-powers concern that Plaintiff is oblivious to even where, as here, courts have acknowledged that "[c]ontrol over immigration is a sovereign prerogative" reserved for the political branches and not the courts. *El Rescate Legal Servs., Inc. v. EOIR*, 959 F.2d 742, 750 (9th Cir. 1992). This is also why the public interest in enforcement of immigration laws is significant. *See United States v. Martinez-Fuerte*, 428 U.S. 543, 556–58 (1976).

In fact, Congress has delegated to the Secretary of DHS significant authority to administer and enforce U.S. immigration laws, including those governing the conditions of admission of foreign students. *See* 8 U.S.C. §§ 1103(a), 1184(a)(1). No such delegation has been given to the courts. Instead, Congress has mandated that DHS develop and administer its own "[p]rogram to collect information relating to nonimmigrant foreign students." *See* 8 U.S.C. § 1372. Thus, any order that inhibits such information-gathering by enjoining a governmental entity from enforcement actions constitutes an irreparable injury that weighs heavily against the entry of injunctive relief. *See New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977). Granting Plaintiff the extraordinary relief he seeks will undermine DHS's authority to enforce the aforementioned provision providing DHS with both the charge and ability to update and maintain information within its own administrative database. The public interest would not be served by the court commandeering that congressionally delegated authority.

Finally, this Court may grant preliminary injunctive relief only if the plaintiff "gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." Fed. R. Civ. P. 65(c). Rule 65(c) thus makes some form of security mandatory as a general rule, *see Gateway E. Ry. Co. v.*

*Terminal R.R. Ass'n of St. Louis*, 35 F.3d 1134, 1141 (7th Cir. 1994), although a court may forgo a bond when "a bond that would give the opposing party absolute security against incurring any loss from the injunction would exceed the applicants ability to pay . . . ." *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 458 (7th Cir. 2010). The risk of harm to Defendants here is not insubstantial, and if the court grants Plaintiff's motion, Defendants request that the court require that he post a security bond during the pendency of the Court's order, in the event it is later determined that Defendants were wrongfully enjoined. *See id.* (reasoning that the government "may lose money as a result of the" preliminary injunction obtained against it).

### III. THIS COURT LACKS JURISDICTION TO CURTAIL THE DEFENDANTS' ABILITY TO COMMENCE IMMIGRATION REMOVAL PROCEEDINGS, ADJUDICATE CASES, OR EXECUTE REMOVAL ORDERS AGAINST A FOREIGN NATIONAL

Lastly, with respect to Plaintiff's request that this Court enjoin Defendants from arresting, detaining, or transferring Plaintiff out of this Court's jurisdiction, this Court lacks jurisdiction to enter any such relief and that request for relief should be denied.

District courts have only that jurisdiction which Congress has provided. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Sheldon v. Sill*, 49 U.S. 441, 448 (1850) ("Congress, having the power to establish the courts, must define their respective jurisdictions."). The INA specifically divests district courts of jurisdiction over "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien." 8 U.S.C. § 1252(g). The Supreme Court determined that "Section 1252(g) was directed against . . . attempts to impose judicial constraints upon prosecutorial discretion."

16

*Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). As a result, § 1252(g) prohibits district courts from hearing challenges to decisions and actions about whether, when, and where to commence removal proceedings. *See Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 598-99 (9th Cir. 2002).

If Defendants decide at some point to charge Plaintiff as deportable and thereafter detain him, such an action would arise "from the decision [and] action" to "commence proceedings." 8 U.S.C. § 1252(g). This includes reviewing the method by which the Secretary of DHS chooses to commence removal proceedings. *See, e.g., Wallace v. Secretary. U.S. Dep't of Homeland Sec.*, 616 Fed. Appx. 958, 961 (11th Cir. 2015) (affirming the district court's holding that it lacked subject matter jurisdiction over "challenges to the government's initiation of removal proceedings."); *see also Alvarez v. U.S. Immigr. & Customs Enf't*, 818 F.3d 1194, 1203 (11th Cir. 2016) (similar); *Saadulloev v. Garland*, No. 3:23-cv-00106, 2024 WL 1076106, at *3 (W.D. Pa. Mar. 12, 2024) ("The Government's decision to arrest Saadulloev on April 4, 2023, clearly is a decision to 'commence proceedings' that squarely falls within the jurisdictional bar of § 1252(g)."). Accordingly, this Court has no jurisdiction to review the discretionary decision to detain a noncitizen who has been charged as removable (which, notably, Plaintiff has not been). Accordingly, any request by Plaintiff that the Court prohibit Defendants from initiating removal proceedings against him, or taking him into custody following such initiation of proceedings, fails because it impedes upon the Secretary of DHS's discretion to commence removal proceedings.

Similarly, if Plaintiff were taken into custody, Defendants have the authority to determine where he would be detained. 8 U.S.C. § 1231(g)(1) ("The Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision

on removal."). Regardless, this would not divest this Court of jurisdiction because the Complaint has already been filed. *See, e.g., Aung v. Barr*, No. 20-CV-681-LJV, 2020 WL 4581465, at *4 (W.D.N.Y. Aug. 10, 2020) ("'It is well established that jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change.'") (quoting *Santillanes v. U.S. Parole Comm'n*, 754 F.2d 887, 888 (10th Cir. 1985)); *Adejola v. Barr*, 408 F. Supp. 3d 284, 287–88 (W.D.N.Y. 2019) ("Petitioner has asked that the Court restrain Respondents from transferring him out of the jurisdiction of the Court while he remains in Respondents' custody. (Dkt. 1 at 27). Respondents correctly point out that the Court lacks jurisdiction to consider this request."). Thus, even though this Court lacks jurisdiction to enjoin Defendants from transferring Plaintiff outside of the district—if he were ever taken into custody, which, again, he has not been and there is no indication he will be—this Court could retain jurisdiction over this matter.

## CONCLUSION

For the foregoing reasons, the court should deny Plaintiff's motion for a temporary restraining order.

<div style="margin-left:40%">

Respectfully submitted,

MICHAEL DIGIACOMO
United States Attorney
Western District of New York

BY:    /s/ ADAM A. KHALIL
Assistant United States Attorney
100 State Street, Suite 500
Rochester, New York 14614
(585) 399-3979
adam.khalil@usdoj.gov

</div>

**DATED:**    April 24, 2025
        Rochester, New York